NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ESTATE OF JESSE M. RIVERA, a New Jersey estate, NYDIA E. RIVERA, a New Jersey resident, and EUGENIO RIVERA, a New Jersey resident,<br><br>　　　　　　Plaintiffs,<br><br>　　　　v.<br><br>PASSSAIC COUNTY, PASSAIC COUNTY JOHN AND JANE DOES 1-30, PASSAIC COUNTY SHERIFF'S DEPARTMENT JOHN AND JANE DOES 1-3-, JERRY SPEZIALE, in his official capacity as Sheriff of Passaic County, and in his individual capacity, CHARLES MEYERS, in his official capacity as Warden of Passsaic County Jail, and his individual capacity, SERGEANT R. CONDATORE, in his official capacity as Classification Officer of Passaic County Jail, and in his individual capacity; DR. WAHBA, in his official capacity as Medical Directo of Passaic County Jail, Dr. DAVID TUTONE, in his official capacity as jailhouse doctor, and in his individual capacity, OTHER JOHN AND JANE DOES 1-30, fictitiously named individuals, and ABC CORPORATIONS 1-30, fictitiously named entities,<br><br>　　　　　　Defendants | **Hon. Dennis M. Cavanaugh**<br><br>**OPINION**<br><br>Civil Action 2:09-cv-05218(DMC)(MF) |

DENNIS M. CAVANAUGH, U.S.D.J.:

　　　This matter comes before the Court upon motion by Passaic County *et al* ("Defendants") for partial summary judgment as to the second amended complaint of the Estate of Jesse M.

Rivera *et al* ("Plaintiffs") pursuant to Fed. R. Civ. P. 56. Pursuant to Fed. R. Civ. P. 78, no oral argument was heard. For the reasons stated herein, Defendant's motion will be **granted** in part and **denied** in part**.**

I.      **BACKGROUND**

This case arises from the tragic death of an 18 year old, Jesse M. Rivera, who was detained in the Passaic County Jail and was subject to a Court order issued on October 7, 2008 by the Honorable Judge Caposella of the Superior Court of New Jersey in Passaic County that he be placed under suicide watch pending an examination and report by Dr. Paul Dasher which was due November 7, 2008. (See Dock. 89-1). Without approval from the Court, Defendants removed Mr. Rivera to the general population on October 9, 2008 following their own internal review of his classification. On the morning of October 13, 2008, Mr. Rivera was discovered hanging by a bed sheet from the shower of his cell. He was transported to St. Joseph's Medical Center where he died less than seven hours later.

Mr. Rivera's parents have sued numerous Defendants under a variety of legal theories, alleging 23 discrete counts in the amended complaint. (See Dock. 56). Defendant has moved to dismiss Count 18 of Plaintiff's Amended Complaint alleging intentional infliction of emotional distress on behalf of Mr. Rivera's parents, neither of whom personally witnessed their son's suicide attempt. This motion is not opposed by Plaintiff, and will be granted. Plaintiff similarly does not oppose Defendant's motion to dismiss the claim for loss of services to Mr. Rivera's brothers, Eugenio Rivera, Jr. and Richard Rivera, nor does Plaintiff contest Defendant's motion to dismiss their claim for loss of society or relationship other than for pecuniary losses defined by the New Jersey Wrongful Death Act. As Defendants correctly point out, none of Mr. Rivera's

siblings are entitled to recover any damages that might have arisen from their brother's death. They are excluded under New Jersey's intestacy statute, and Mr. Rivera's parents are his sole intestate beneficiaries.

At issue in the instant motion for partial summary judgment is Defendant's motion to dismiss Jesse Rivera's loss of value of life, so-called "hedonic" damages, and the pecuniary loss to his parents caused by his death. Plaintiff maintains that New Jersey's Wrongful Death Act makes the injury to Mr. Rivera's parents resulting from lost companionship, advice, guidance and counsel compensable, although they expressly acknowledge that they do not seek recovery for their loss of society due to the death of their son.

**II      LEGAL STANDARD**

"A court reviewing a summary judgment motion must evaluate the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." Gaston v. U.S. Postal Serv., 2009 U.S. App. LEXIS 5673 (3d Cir. 2009). However, "[t]he judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

"A party against whom relief is sought may move at any time, with or without supporting affidavits, for summary judgment on all or part of the claim." Fed. R. Civ. P. 56(b). "[T]he burden on the moving party may be discharged by "showing" -- that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Cartrett, 477 U.S. 317, 325 (1986). "[R]egardless of whether the moving party accompanies its summary judgment motion with affidavits, the motion may, and should, be

3

granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56©." Celotex, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(c).

> When a motion for summary judgment is properly made and supported, [by contrast,] an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must--by affidavits or as otherwise provided in this rule--set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

Fed. R. Civ. P. 56(e)(2). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (internal citations omitted). Indeed, "unsupported allegations in [a] memorandum and pleadings are insufficient to repel summary judgment." See Schoch v. First Fid. Bancorp., 912 F.2d 654, 657 (3d Cir. 1990). Rule 56(e) permits "a party contending that there is no genuine dispute as to a specific, essential fact 'to demand at least one sworn averment of that fact before the lengthy process of litigation continues.'" Id. (quoting Lujan v. National Wildlife Fed'n., 497 U.S. 871, 889 (1990)). "It is clear enough that unsworn statements of counsel in memoranda submitted to the court are even less effective in meeting the requirements of Rule 56(e) than are the unsupported allegations of the pleadings." Schoch, 912 F.2d at 657.

**III.     DISCUSSION**

As Plaintiff correctly points out, the governing law concerning whether hedonic damages may be awarded is the decision of the Appellate Division of the New Jersey Superior Court in *Eyoma v. Falco* 247 N.J.Super. 435, 453, 589 A.2d 653, 662 (N.J.Super.A.D.,1991) which holds

that "damages for loss of enjoyment of life may be awarded as part of damages for the total disability and impairment which exists when tortious injury causes one to be in a comatose or vegetative state." There is no requirement that the party who has suffered the tortious injury need be aware of what he or she has suffered, nor of the life he or she is unable to enjoy in a comatose or vegetative state. If it were the case that hedonic damages were only available in a situation where the victim retained consciousness, it would be preferable, from a damage recovery standpoint, for a tortfeasor to inflict an injury that resulted in loss of consciousness in order to limit recovery. This is surely an absurd conclusion. Although Mr. Rivera's death resulted from suicide and not from medical malpractice as in *Eyoma*, the cause of Plaintiff's injury in *Eyoma* was not dispositive. The Court's decision that the victim's mental state did not preclude recovery for hedonic damages outside the general rubric of pain and suffering was not based on the cause of his comatose state. Defendant argues that the New Jersey Supreme Court "is far less likely" (see Dock. 84-1, page 4, footnote 2) to construe the facts in this case as they did in *Eyoma*, but the Court refuses to speculate on how another Court might apply its own precedent to a different factual scenario. Defendant argues that Mr. Rivera's suicide suggests that he was not enjoying life, and so is not entitled to hedonic damages. The Court will expressly decline to make that assumption. It is both unseemly and unfair for the Court to punish the victim and speculate on his ability to enjoy life at the time of his suicide. A jury may decide that hedonic damages should be limited because of Mr. Rivera's mental state, but the Court will not do so.

      A more interesting question is presented by the correct time frame to be applied to the hedonic damages in the instant case. Both parties agree that entitlement to hedonic damages ceased when Mr. Rivera died on the afternoon of October 13, 2008, but the question is whether

they began on October 9, 2008 when Defendants violated the court order by placing Mr. Rivera in the general population, or whether they only obtain for the seven hours during which Mr. Rivera lingered in a comatose state before his death. Defendant has the better of the argument, for while the allegedly tortious act at issue was the removal of Mr. Rivera from the "special watch" unit, no damages occurred until Mr. Rivera attempted suicide. Mr. Rivera's detention was lawful and not in and of itself tortious; not only was he not falsely imprisoned, he was detained pursuant to an order of protection that was issued to protect his mother, Plaintiff Nydia Rivera. Had Defendants failed to abide by the court order, but without incident, there would be no basis on which Plaintiffs could recover. It is only because of Mr. Rivera's unilateral action after the allegedly tortious act, but not causally related to the tortious act, that this lawsuit obtains in the first place. To put it differently, Defendant's liability is premised on the theory that they failed to prevent Mr. Rivera's suicide, not that they caused it. If Mr. Rivera had been transferred to the general population but had not attempted suicide, the mere fact that Defendants had violated a Court order and nothing more would not have given rise to hedonic damages, nor to any other damages, for that matter. Plaintiff cites *Smith v. Whitaker*, 313 N.J. Super 165, 186 (App. Div. 1998, *aff'd* 160 N.J. 221 (1999) for the proposition that "the relevant inquiry is the interval between the time of the commission of the tort and the death," but the instant case is clearly distinguishable. In the case of an accident where the tort and the injury are one and the same, or occur virtually simultaneously, the interval, if there is one, is negligible. But here, where days intervened between the allegedly tortious conduct and its tragic aftermath, that logic is unavailing. Therefore, the Court holds that as a matter of law, the period for which Plaintiffs may be entitled to recover

hedonic damages is the time between 5:23 a.m. and 12:12 p.m. on October 13, 2008[1], the less than seven hours between the time that Mr. Rivera attempted suicide, and his death at St. Joseph's Medical Center.

It is difficult to characterize the dispute between the parties as to the damages Plaintiff seeks for loss of "companionship, guidance, advice, counsel, services and earnings caused by the death of their son." In fact, it is hard to know whether there is any dispute at all. As Defendant acknowledges, "Defendants *did not move* to dismiss Plaintiff's claims for the categories identified." (Dock. 84-1, page 6, emphasis in the original). Since it appears that Plaintiff does not oppose this assertion, there is nothing for the Court to decide. To the extent that Plaintiff seeks emotional, non-pecuniary losses that are not recoverable under the Wrongful Death Act, they are not entitled to such. The Court notes Defendant's willingness to acknowledge, that outside of emotional, non-pecuniary losses, "the claims for loss of household/family accompaniment services addressed in Section II of the Smith report might be recoverable if Plaintiffs met the burden of proving that such services could be secured for money from a stranger (i.e. business consultant, therapist, counselor, etc.)."( See Dock. 84-1, pages 6-7). Although it is premature at this point in the litigation, the Court notes that in determining the projected value of Mr. Rivera's potential contribution to his family, "where damages for the loss of advice, guidance and counsel described in *Green v. Bittner,* 85 *N.J.* 1, 424 *A.*2d 210 (1980), are alleged, the physical, mental, and moral characteristics of the decedent are admissible only as they bear on the likelihood and

---

[1]Plaintiff's reply brief states that Mr. Rivera died on October 12, 2008 (see Dock. 87, page ID 1378) but the medical records (Dock. 89-6) and the complaint, as well as Defendant's motion for summary judgment all reference the date of October 13, 2008.

extent of such contributions." *Johnson v. Dobrosky* 187 N.J. 594, 598, 902 A.2d 238, 240 (N.J.,2006). Once again, Mr. Rivera's mental state, and how that bears on the pecuniary damages at issue, will be an issue to be decided at trial.

## IV.     CONCLUSION

For the reasons stated herein, Defendant's motion pursuant to Fed. R. Civ. P. 56 (c) will be **granted** in part and **denied** in part. An appropriate Order follows this Opinion.

 S/ Dennis M. Cavanaugh  
 Dennis M. Cavanaugh, U.S.D.J.

Date:      July   25  , 2011  
cc:           Counsel of Record  
                The Honorable Mark Falk, U.S.M.J.  
                File